1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAMELA A. MAESTAS,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:13-cv-05878-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

        Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the

remaining record, the Court hereby finds that for the reasons set forth below, defendant's

decision to deny benefits should be affirmed.

                    FACTUAL AND PROCEDURAL HISTORY

        On December 28, 2010, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging in both applications she became disabled beginning

December 31, 2006. See ECF #14, Administrative Record ("AR") 10. Both applications were

ORDER - 1

denied upon initial administrative review and on reconsideration. See id. A hearing was held

before an administrative law judge ("ALJ") on July 16, 2012, at which plaintiff, represented by

counsel, appeared and testified, as did a vocational expert. See AR 30-78. Also at that hearing,

plaintiff amended her alleged onset date of disability to May 19, 2010, after her date last

insured,[1] thereby resulting in the voluntary withdrawal of her application for disability insurance

benefits. See AR 10, 33-34.

In a decision dated September 24, 2012, the ALJ determined plaintiff to be not disabled.

See AR 10-23. Plaintiff's request for review of the ALJ's decision was denied by the Appeals

Council on August 2, 2013, making that decision the final decision of the Commissioner of

Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 416.1481. On October 10, 2013,

plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final

decision. See ECF #3. The administrative record was filed with the Court on March 10, 2014.

See ECF #14. The parties have completed their briefing, and thus this matter is now ripe for the

Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

for an award of benefits, or in the alternative for further administrative proceedings, because the

ALJ erred: (1) in finding plaintiff did not have a severe mental impairment; (2) in evaluating the

medical evidence in the record; (3) in discounting plaintiff's credibility; (4) in assessing her

residual functional capacity; and (5) in finding her to be capable of both returning to her past

relevant work and performing other jobs existing in significant numbers in the national economy.

Plaintiff also argues additional evidence submitted to the Appeals Council warrants remand for

---

[1] To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).

ORDER - 2

1    further proceedings. For the reasons set forth below, however, the Court disagrees that the ALJ

2    erred in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny

3    benefits should be affirmed.

4                                              DISCUSSION

5          The determination of the Commissioner that a claimant is not disabled must be upheld by

6    the Court, if the "proper legal standards" have been applied by the Commissioner, and the

7    "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,

8    785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

9    Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

10   Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

11   proper legal standards were not applied in weighing the evidence and making the decision.")

12   (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

13         Substantial evidence is "such relevant evidence as a reasonable mind might accept as

14   adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

15   omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

16   supported by inferences reasonably drawn from the record."). "The substantial evidence test

17   requires that the reviewing court determine" whether the Commissioner's decision is "supported

18   by more than a scintilla of evidence, although less than a preponderance of the evidence is

19   required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

20   admits of more than one rational interpretation," the Commissioner's decision must be upheld.

21   Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

22   sufficient to support either outcome, we must affirm the decision actually made.") (quoting

23

24

25

26

ORDER - 3

1   Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

2   I.      The ALJ's Step Two Determination

3          Defendant employs a five-step "sequential evaluation process" to determine whether a

4   claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at

5   any particular step thereof, the disability determination is made at that step, and the sequential

6   evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if

7   an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a

8   claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii),

9   (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities

10  are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85-

11  28, 1985 WL 56856 *3.

12         An impairment is not severe only if the evidence establishes a slight abnormality that has

13  "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

14  56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

15  F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their

16  symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

17  1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two

18  inquiry described above, however, is a de minimis screening device used to dispose of groundless

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached. If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them. It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may
> not try the case de novo, neither may it abdicate its traditional function of review. It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

claims. See Smolen, 80 F.3d at 1290.

The ALJ found at step two in this case that although plaintiff had medically determinable mental impairments, they were not severe. See AR 12-15. Plaintiff argues the medical evidence in the record supports a finding of severity, but most of the objective clinical findings she cites actually shows her mental impairments have not had more than a minimal impact on her ability to perform basic work activities. See ECF #17, pp. 7-9 (citing AR 433, 829, 831-32, 834-35, 837-38, 875, 890). Plaintiff does point to a global assessment of functioning ("GAF") score of 51 in the record (see id. at p. 8 (citing AR 832)), but such a score is a *subjective* determination of ability to function. See Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007)[3]; SSR 85-28, 1985 WL 56856 *4 (at step two "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities").  Nor has plaintiff challenged the ALJ's reasons for not adopting that score. See AR 15; See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

Plaintiff also points to a May 4, 2012 evaluation report from Terilee Wingate, Ph.D., who assessed a current GAF score of 45,[4] along with certain specific mental functional limitations.

---

[3] "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34).

[4] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Id. (quoting DSM-IV-TR at 34); see also Cox v. Astrue, 495

ORDER - 5

See AR 910-11. That evaluation report was not presented to the ALJ, however, and therefore she

cannot be faulted for failing to consider it. In addition, as just noted a GAF score constitutes a

subjective determination of ability to function rather than objective clinical evidence thereof, and

as discussed in greater detail below, the Court declines to find Dr. Wingate's evaluation report –

as well as the other additional evidence submitted to the Appeals Council – provides a sufficient

basis for overturning the ALJ's non-disability determination.

Lastly, plaintiff takes issue with the ALJ's decision to accord significant weight to the

mild mental functional limitations assessed by examining psychologist, Janis L. Lewis, Ph.D.,

and non-examining psychologists, Matthew Comrie, Psy.D., and Bruce Eather, Ph.D. (see AR

13-15), asserting it is apparent her mental impairments worsened subsequent to when those

assessment were given. Plaintiff fails to point to specific evidence that worsening had occurred,

however, nor does the Court find the record shows this to be the case. As such, plaintiff has not

established any error on the part of the ALJ here.

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v.

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

---

F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

ORDER - 7

1    <u>Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir.

2    2001). An examining physician's opinion is "entitled to greater weight than the opinion of a

3    nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may

4    constitute substantial evidence if "it is consistent with other independent evidence in the record."

5    <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

6        A.    <u>Dr. Wentworth</u>

7        Plaintiff also challenges the ALJ's following findings concerning the medical evidence in

8

9    the record:

10       On May 2010, treating physician Dr. [Mark A.] Wentworth opined that the
         claimant was "severely limited" (Exhibit 4F/64). In the assessment form,
11       "severely limited" was defined as being unable to "lift at least two pounds or
         unable to stand and/or walk" (Exhibit 4F/64).  Dr. Wentworth also opined the
12       claimant had limitations bending, climbing, crouching, handling, pulling,
         pushing, reaching, and stooping (Exhibit 4F/64). In justifying such opined
13       limitations, Dr. Wentworth reported that the claimant had tenderness in the
         left thoracic spine and in the sacroiliac joints bilaterally (Exhibit 4F/53).
14       However, Dr. Wentworth reported that an examination of the claimant's
         abdomen, gait, station, hips, lower extremities, shoulder, and upper
15       extremities showed they were all within normal limits (Exhibit 4F/53).
         Moreover, Dr. Wenworth's assessment appears inconsistent with subsequent
16       examination findings, including an examination performed a mere three
         months later showing no significant abnormalities or pain (Exhibit 4F/33).
17       Notably, Dr. Wentworth's opinion is also inconsistent with and more limiting
         than his subsequent assessments, as discussed below. Due to all these
18       inconsistencies, the undersigned accords this assessment little weight.

19
         Subsequently, on November 2010, Dr. Wentworth opined the claimant could
20       lift 10 pounds occasionally, two pounds frequently, and stand and sit for two
         hours in an eight-hour workday (Exhibit 5F/162). Dr. Wentworth also opined
21       the claimant needed to change positions frequently because of back pain
         (Exhibit 5F/163). A careful review of the record does not demonstrate the
22       basis on which Dr. Wentworth opined such restricted limitations on lifting,
         sitting, and standing. In fact, such limitations on the claimant's lifting
23       capacities are inconsistent with his more recent November 2011 assessment,
         discussed below. More significantly, such restrictions are inconsistent with
24       Dr. Wentworth's own report of "little or no back pain or tenderness" on
         examination only five months later (Exhibit 4F/4). As to Dr. Wentworth's
25       opinion that the claimant needs frequent changes in position, such limitations
26

are inconsistent with physical therapy reports showing decreased pain symptoms, as well as treatment reports indicating minimal pain or tenderness (*See e.g.*, [E]xhibits 3F/20 and 4F/4). Accordingly, the assessment is given little weight.

Interestingly, on November 2011, Dr. Wentworth opined the claimant could lift a maximum of 20 pounds and lift 10 pounds frequently, consistent with a capacity for light work and indicating an increase in functionality compared to his previous assessments (Exhibit 12F/1). This portion of the assessment is consistent with the record as a whole, including physical therapy reports showing the claimant reported overall improvement and decreased back pain (Exhibit 3F/22). The portion of the assessment is also consistent with the claimant's reported level of functioning, including reports indicating she performs cleaning chores for at last two hours each day (Exhibit 11F/2). Accordingly, it is given significant weight. However, Dr. Wentworth also opined the claimant had postural restrictions, with limitations in her ability to push and pull, as well as use foot controls (Exhibit 12F/1, 3-4). The undersigned fully and thoroughly considered the assessment. However, such limitations are inconsistent with the overall record, particularly radiographs showing only mild scoliosis of the spine and well maintained spinal disc spaces (Exhibit 14F/18). Such limitations in postural activities is also inconsistent with the claimant's reported level of actual functioning, which, as discussed above, includes performing light household chores, including spending at least two hours a day cleaning (Exhibits 5F/61, 10F/1, and 11F/2). This portion of the assessment is thus given only some weight.

AR 19-20. Specifically, plaintiff argues the ALJ erred in rejecting Dr. Wentworth's May 2010 and November 2010 functional assessments due to their inconsistency with the overall objective medical evidence in the record, because "Dr. Wentworth's medical treatment notes, considered in their entirety, provide longitudinal support for his opinions about [her] limitations." ECF #17, p. 6. But plaintiff fails to explain how those treatment notes actually support Dr. Wentworth's assessments. Indeed, Dr. Wentworth's notes, though containing findings indicating the presence of pain and symptoms, hardly suggest the level of functional restrictions found in those assessment. See AR 428, 432-33,456-57, 462, 521-22, 546-49, 589, 872, 874-75, 880-83; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if inadequately supported by clinical findings or "by the record as a whole").

ORDER - 9

Plaintiff also argues the fact that Dr. Wentworth found her ability to lift and carry had

increased is not a valid reason for rejecting that physician's two earlier opinions. But as noted by

the ALJ, in May 2010 Dr. Wentworth opined that plaintiff was severely limited in terms of her

work level – including in her ability to lift and carry – which is defined in relevant part as being

unable to lift at least two pounds (see AR 590), and in November 2010 he opined that she could

only lift ten pounds occasionally and two pounds frequently (see AR 590, 700, 840); Bayliss v.

Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical source's

functional assessment and clinical notes, recorded observations and other comments regarding

claimant's capabilities "is a clear and convincing reason for not relying" thereon). In addition,

while Dr. Wentworth did put cross marks over those check-box sentences on the evaluation form

he completed dealing with the ability to sit and stand, it is not at all clear he intended to cross

them off – given that he did not cross off the whole sentence, but instead use the same type of

cross marks as he did for the other functional limitations he noted (see AR 840) – indicating an

inability to perform those tasks as plaintiff asserts.  The ALJ's own reading of that evidence thus

must be upheld. See Sorenson, 514 F.2d at 1119 n.10; Allen, 749 F.2d at 579.

      B.    Other Medical Evidence

Plaintiff summarizes a number of other medical records containing various diagnoses,

clinical findings and her own self-reports, arguing this evidence is consistent with the opinions of

Dr. Wentworth and thus provides additional support therefor.  But none of the records plaintiff

cites actually demonstrate she has the level of functional limitation found by Dr. Wentworth in

his opinions and rejected by the ALJ, and accordingly are insufficient to establish such. See ECF

#17, pp. 10-14 (citing  AR 370, 372, 392, 394, 396, 399-403, 407, 409-10, 430, 452-53, 464,

850-51, 856-58, 862-64, 884-85, 890-92); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)

ORDER - 10

1
2
3
4
5
6
7
8

("The mere existence of an impairment is insufficient proof of a disability"). Plaintiff argues as well that because neither non-examining physicians Drew Stevick, M.D., and Dennis Koukol, M.D., nor non-examining psychologist, William Lysak, Ph.D., reviewed any medical evidence in the record beyond May 2011 and February 2011 respectively, the ALJ erred in giving significant weight to their opinions. See AR 19-20. As discussed above, though, plaintiff has failed to establish that the record shows her condition worsened or was otherwise of any greater severity than the ALJ found in her decision.

9

III.    The ALJ's Assessment of Plaintiff's Credibility

10
11
12
13
14
15
16
17

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

18
19
20
21
22
23
24
25

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

26

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

ORDER - 11

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen</u>, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

The ALJ in this case discounted plaintiff's credibility in part on the basis that her alleged disabling symptoms and limitations were not entirely consistent with the medical evidence in the record. <u>See</u> AR 17-19. Given that as discussed above the ALJ did not err in her evaluation of that evidence, this was a valid basis for finding plaintiff less than fully credible. <u>See</u> . <u>Regennitter v. Commissioner of Social Sec. Admin.</u>, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's complaints are inconsistent with objective medical evidence can satisfy clear and convincing requirement). The ALJ also noted evidence that plaintiff's symptoms improved with treatment, a finding plaintiff has not specifically challenged. <u>See</u> AR 17-18; <u>Morgan</u>, 169 F.3d at 599 (ALJ may discount claimant's credibility based on medical improvement); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998) (same).

Plaintiff does take issue with the ALJ's following additional reasons for discounting her credibility:

> Other inconsistencies in the record raise additional credibility concerns. In particular, the claimant's actual level of functioning suggests that her symptoms are not as debilitating as alleged. For example, the claimant testified at the hearing that she experiences continuous excruciating pain with any movement due to Tietze syndrome. She also alleged at the hearing to experiencing [sic] nausea shortly after waking. Yet, the claimant informed examining psychologist Dr. Lewis that she is able to perform activities of daily living and perform light household chores (Exhibit 5F/61). Similarly, despite complaints of debilitating pain, the claimant reported that she cleans the bathroom at least three times a day, spending up to two hours cleaning (Exhibit 11F/2).

AR 19. Specifically, plaintiff asserts "the fact that [she] obsessively cleans her bathroom is not a

ORDER - 12

convincing reason to reject her testimony about her generally limited abilities due to intermittent extreme pain." ECF #17, p. 16. But as the ALJ noted, plaintiff testified to essentially continuous disabling symptoms for the past nine and a half years. <u>See</u> AR 44-49. Nor was it unreasonable for the ALJ to find that someone who suffers from excruciating or debilitating pain likely would not be able to perform normal activities of daily living, including spending up to two hours at a time cleaning. Even if it could be shown that plaintiff only experienced intermittent episodes of pain, furthermore, the fact that she could engage in obsessive cleaning would belie her claims of extreme pain during those limited times as well.

IV.     <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>See</u> <u>id.</u> It thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>See</u> <u>id.</u> However, an inability to work must result from the claimant's "physical or mental impairment(s)." <u>Id.</u> Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u> In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." <u>Id.</u> at *7.

ORDER - 13

The ALJ found plaintiff had the residual functional capacity:

**. . . to perform light work . . . except she can never climb ladders, ropes, or scaffolds, but can occasionally climb stairs, and occasionally stoop, kneel, crouch, crawl, and balance. She is unable to lift overhead, but can less than occasionally push 20 pounds with her arms and occasionally push up to 10 pounds with her arms. She must avoid concentrated exposure to vibrations and hazards and must have the opportunity to change positions for 15 minutes after approximately two hours of sitting. She must have the opportunity to change positions for 30 minutes after approximately four hours of sitting.**

AR 16 (emphasis in original). Plaintiff argues this RFC assessment is erroneous given the ALJ's errors in evaluating the medical evidence in the record and in assessing her credibility. But as discussed above, the ALJ did not err in evaluating either the medical evidence in the record or in assessing plaintiff's credibility, and therefore plaintiff has failed to show error on the part of the ALJ in regard to her residual functional capacity as well.

V.    The ALJ's Step Four and Step Five Determinations

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as a dispatcher or shipping checker based on the testimony of the vocational expert. See AR 21. The claimant has the burden at step four of the disability evaluation process to show that he or she is unable to return to his or her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Plaintiff has not met that burden here, as her argument that the ALJ erred in so finding here at step four – as with her argument regarding her RFC assessment – is based on the ALJ's alleged errors in evaluating the medical evidence in the record and in discounting her credibility.

If a claimant cannot perform his or her past relevant work at step four, at step five the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this

ORDER - 14

through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 67. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 67-68. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 21-23. Plaintiff once more relies on the ALJ's alleged errors in evaluating the medical evidence in the record and in discounting her credibility to assert error here at step five.  For the reasons already discussed, no such errors have been established. Nor does the record support the additional functional limitations posed to the vocational expert at the hearing. See AR 72-73.

ORDER - 15

1

VI.    Additional Evidence Submitted to the Appeals Council

2

Evidence submitted for first time to the Appeals Council is part of the record the Court

3

"must consider when reviewing the Commissioner's final decision for substantial evidence."

4

Brewes v. Commissioner of Social Security Admin., 682 F.3d 1157, 1163 (9th Cir. 2012). The

5

record in this case contains additional evidence submitted to the Appeals Council after the ALJ

6

issued her decision, but the Court finds that evidence would not likely result in the ALJ finding

7

differently, and therefore is insufficient to overturn her decision.  For example, much of that

8

evidence simply fails to establish or indicate the presence of functional limitations greater than

9

those found by the ALJ. See AR 894, 902, 914-15, 919-20, 924, 937, 939. One mental health

10

therapist did state plaintiff "experiences a loss of functioning in daily or [she] is at risk in daily

11

life as evidenced by inference in daily functioning" (AR 937), but this clearly is based solely or

12

largely on plaintiff's own self-reporting regarding her ability to function. The same is true with

13

respect to the comment by plaintiff's physical therapist that she could not sit, stand or walk for

14

more than 20 minutes due to her pain. See AR 894.

15

16

Plaintiff also points to two GAF scores of 45 and another one of 49 (see AR 910,916,

17

925), but as discussed above such scores are subjective determinations of ability to function, and

18

the ALJ properly found plaintiff to be less than entirely credible concerning her subjective

19

complaints. There is a questionnaire from plaintiff's attorney signed by Dr. Wentworth in mid-

20

February 2013, in which he opines that if she had attempted to perform even sedentary work on a

21

full-time basis since her amended alleged onset date of disability, this would have resulted in

22

three or more days of work missed per month on a more probable than not basis. See AR 940.

23

But the questionnaire contains little in the way of objective clinical findings that support this

24

opinion (see AR 939-40), and given the validity of the ALJ's rejection of Dr. Wentworth's prior

25

26

ORDER - 16

functional assessments on the same basis, it is highly likely this opinion too would have been similarly rejected. The same is true in regard to the moderate to marked mental functional limitations found by examining psychologist, Terilee Wingate, Ph.D., in light of the largely unremarkable clinical findings she provided. See AR 909-18.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 10th day of September, 2014.


Karen L. Strombom
United States Magistrate Judge

ORDER - 17